IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SERGIO CORTES, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>DONALD STOLWORTHY, et al.,[1] )<br>)<br>Defendants. ) | Case No. 3:15-cv-00690-SMY |

### MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Sergio Cortes is currently incarcerated at the Lawrence Correctional Center in Sumner, Illinois. (Doc. 1 at 1.) Proceeding *pro se*, Cortes has brought a civil rights action pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated during a strip search and cell shakedown conducted by the Orange Crush Tactical Team at Lawrence on July 10, 2014. (*Id.* at 2-3.) The named defendants include Donald Stolworthy, the Director of the Illinois Department of Corrections; Joseph Yurkovich, the Chief of Operations for the Illinois Department of Corrections; and Stephen Duncan, the Warden of Lawrence. (*Id.* at 5.) Cortes has also named fifty-four corrections officers, who he alleges were members of the Orange Crush team assigned to Lawrence during the search, as well as an Unknown Party placeholder for members of the Orange Crush team that he could not identify before filing his complaint. (*Id.* at 6.) Cortes seeks injunctive relief, compensatory damages, and punitive damages. (*Id.* at 17-25.)

This matter is now before the Court for a preliminary review of Cortes' complaint

---

[1] A few corrections to the caption are in order.  For one, the **CLERK** is **DIRECTED** to remove Janey Carle and add Janet Carle to this case.  In addition, Cortes included Christopher Brant, Ethan Clary, Matthew Winka, and Michael Dean as parties in his more-developed list of defendants, but did not include those individuals in the caption.  Because this appears to be an oversight, the **CLERK** is **DIRECTED** to add those parties as defendants to this case.

pursuant to 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Background

Cortes' housing unit at Lawrence was searched by the Orange Crush officers on July 10, 2014. (*Id.* at 8.) Upon entering his housing wing, the officers began "making loud noises" while "hitting their batons on the walls, doors, and railings." (*Id.*) Two of the Orange Crush officers lined up in front of Cortes' cell and told him to get "buck ass naked!" (*Id.*) Once Cortes and his cellmate were nude, one of the officers ordered Cortes' cellmate to turn around and spread his buttocks, and then directed Cortes' cellmate to face the officer and lift up his genitals. (*Id.* at 9.) The officer then ordered Cortes' cellmate to use his hands to search his own mouth for contraband. (*Id.*) The officers tried to order Cortes to engage in the same behavior, but ran into a language barrier, as Cortes speaks limited English. (*Id.*) The officers then used Cortes' cellmate as a translator, ordering Cortes to duplicate the search on himself. (*Id.*) During the search, Cortes noticed that one of the officers watching the search was female. (*Id.* at 10.)

After the search was finished, the officers directed Cortes and his cellmate to dress in pants, a State-blue overshirt, and boots, but did not permit them to put on underwear. (*Id.*) Cortes and the other inmates were then ordered outside of their cells and to a nearby wall, where they were directed to keep their backs to the officers, their heads down, and to not look at the officers. (*Id.*) While in this position, Cortes and other inmates were handcuffed "in a very

painful manner," causing injuries to Cortes' wrists. (*Id.*) When Cortes moaned in pain, one of the officers told him to "[s]top acting like a fucking baby and shut the fuck up." (*Id.*)

Cortes and the other inmates were then directed to walk out of the housing wing. (*Id.* at 11.) During the walk, Cortes saw a few objects on the ground, and he glanced down to look at them. (*Id.*) This led one of the officers to rush at Cortes, jump up, and kick Cortes in his lower back, causing him to fall to the ground. (*Id.*) At this point, several other officers began screaming at Cortes to "get the fuck up and back on your feet." (*Id.*) Cortes had trouble on account of the handcuffs, so one of the officers grabbed his back and "painfully pulled him back onto his feet." (*Id.*) As Cortes exited the housing unit, one of the officers – Michael Gilreath – was waiting and "beating" on all of the inmates that passed through the door. (*Id.*)

After exiting the housing unit, officers lined Cortes up next to other inmates and began hitting their batons, chanting "Time to pay" and other epithets. (*Id.*) Once the chanting stopped, officers grabbed the back of Cortes' head and "slammed it violently into the back of the inmate ahead of him in line." (*Id.*) The officers then ordered the inmates to stand in such a way that one inmate's genitals were in direct contact with the buttocks of the inmate ahead – a practice referred to as "Nuts to Butts" by the officers. (*Id.* at 11-12.) To squeeze Cortes closer to another inmate, Cortes says that one officer shoved his baton in between Cortes' legs, causing Cortes to straighten his legs and force his hips into the inmate in front of him. (*Id.* at 12.) The officers then ordered all of the inmates to walk in this manner to the prison cafeteria, yelling that they wanted "no fucking daylight" between the prisoners along the way. (*Id.*) During the walk to the cafeteria, if one of the inmates pulled his head back from the inmate in front of him, the officers would attack him. (*Id.*) Cortes himself was "poked and hit" during the march. (*Id.*)

When the prisoners arrived at the cafeteria, they were kept in handcuffs and ordered to sit

at solid metal tables with their chins pressed to their chest. (*Id.* at 13.) One officer – Steven Conrad – was initially helping some of the inmates who were in pain, but when an unknown Orange Crush officer saw him helping, he told Conrad to stop and reprimanded him. (*Id.*) Cortes' cellmate, at Cortes' behest, tried to get Conrad to help Cortes, but Conrad said that he "wish[ed] [he] could," but that he "already got [his] ass chewed for helping." (*Id.*)

After several hours in the cafeteria, the Orange Crush officers returned. (*Id.*) They lined up Cortes and the other inmates, again slammed the inmates' heads into the back of the inmates ahead of them, and ordered all involved into "Nuts to Butts" formation for the walk back to their cells. (*Id.*) When Cortes arrived in his cell, he found that his cell had been "destroyed along with his property." (*Id.* at 14.) Several items of Cortes' personal property had been taken, including items he purchased from the commissary and an outside art supplier at Lawrence. (*Id.*) Cortes received a shakedown slip sometime thereafter: the identification of the officer who searched his cell had been "obscured," and the slip contained an "inaccurate account" of what had been taken. (*Id.*) Cortes' cellmate expressed outrage at the condition of his cell, and an officer told him that his cell might not end up that way if he stopped "filing lawsuits." (*Id.* at 14-15.) Warden Duncan was present nearby during this outburst and, in response to the cellmate's complaints, told him to "write a grievance" – that he did not "want to hear about it." (*Id.* at 15.)

Cortes asserts that both the strip search and movement of inmates were purposely conducted in a humiliating manner. (*Id.*) He also says that officers executed the shakedown procedures pursuant to a policy or practice that was "implemented, overseen, and encouraged by [Illinois Department of Corrections] supervisors," including Yurkovich and Duncan. (*Id.* at 16.)

## Discussion

The Court will begin with a preliminary note concerning the handling of Orange Crush

cases in the Southern District of Illinois. Cortes' complaint here closely tracks the pleading in *Ross v. Gossett*, Case No. 15-cv-309-SMY-PMF, which was filed in this Court on March 19, 2015. The plaintiff in *Ross* is seeking injunctive relief and damages on behalf of himself and a class of prisoners that were subjected to similar strip searches while incarcerated at Lawrence and three other Illinois prisons during 2014. Should the *Ross* class be certified, Cortes would likely be a member of the class. Owing to the similarities between the two cases and the need to consolidate judicial resources, Cortes' case was transferred to the undersigned judge.

With that point out of the way, the Court will evaluate Cortes' complaint pursuant to 28 U.S.C. § 1915A. In his complaint, Cortes has listed five discrete causes of action, which are set out below. Because Cortes has enumerated all of his claims, the Court will rely on his list for the operative causes of action that Cortes wishes to bring in this case.

> **COUNT 1:** Eighth Amendment claim against all Defendants for inflicting unnecessary physical and emotional pain and suffering upon Plaintiff during the strip search, shakedown, and related actions.
>
> **COUNT 2:** Conspiracy under 42 U.S.C. § 1983, in that Defendants agreed to deprive Plaintiff of his constitutional rights and protect one another from liability.
>
> **COUNT 3:** Eighth Amendment claim for failure to intervene to prevent the violation of Plaintiff's constitutional rights.
>
> **COUNT 4:** Violation of the Prison Rape Elimination Act, 42 U.S.C. § 15607.
>
> **COUNT 5:** Intentional infliction of emotional distress under Illinois state law.

Given the similarity between Cortes' complaint and the complaint in *Ross*, the fact that the complaint in *Ross* was permitted through screening, and the fact that a motion to dismiss is pending in *Ross* but not yet decided, the Court is of the opinion that the above counts cannot be dismissed at this time. The complaint will be allowed to proceed. However, the Court stresses that the defendants are not precluded from moving to dismiss the complaint or portions of it for

the reasons articulated in the *Ross* motion to dismiss (or for any other reasons).

One final note concerning the Unknown Party Orange Crush officers: these officers must be identified with particularity before service of the complaint can occur on them. Where a prisoner's complaint states specific allegations describing the conduct of unknown corrections officers sufficient to raise a constitutional claim against them, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir.2009). In this case, guidelines for discovery aimed at identifying the unknown parties will be set by the magistrate judge. Once the unknown Orange Crush officers are identified, Cortes shall file a motion to substitute the named individuals with the Unknown Party officer designations.

## Disposition

**IT IS HEREBY ORDERED** that Plaintiff's complaint shall proceed through screening.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Service of Process at Government Expense (Doc. 3) is **GRANTED**. Service will be ordered as indicated below.

The Clerk of Court shall prepare for Defendants **STOLWORTHY, YURKOVICH, DUNCAN, GILREATH, TANNER, STOUT, MONICAL, LEWIS, YONAKA, JOHNSON, JENKINS, CARLE, BROWN, SAWYER, McCORMICK, GINDER, PATTERSON, BERRY, BAYLOR, CARROLL, STUCK, WEBER, DUST, CARTER, HARRINGTON, SHEHORN, KIDD, VAUGHN, OCHS, LIVINGSTON, KAMP, SENN, RALSTON, GOBLE, AUSBROOK, BRANT, CLARY, WINKA, DEAN, CALES, GOSNELL, LOCKHART, TRIBBLE, GANGLOFF, THOMASON, ECKELBERRY, LINE, MILAM, BUCHANAN, HAMILTON, VOLK, PERKINS, BROOKS, CHENAULT JR., MULLIN, MAYS,** and **RICHEY**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a

Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown Party defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. It is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the

complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 27, 2015**

                                                s/ STACI M. YANDLE
                                                United States District Judge